UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| IN RE:<br><br>THE KASDEN FUEL COMPANY,<br><br>Debtor | CHAPTER 11<br><br>CASE NO. 10-21973 (ASD)<br><br>Re: Doc. ID No. 6 |
|---|---|

**FINAL ORDER GRANTING
DEBTOR'S MOTION FOR USE OF CASH COLLATERAL**

Upon consideration of the Debtor's Motion for Use of Cash Collateral on Preliminary and Final Basis ("Motion") filed by Kasden Fuel Company, Inc., debtor and debtor-in-possession ("Debtor"), by and through its proposed attorneys, Reid and Riege, P.C., after due notice and a hearing, and it appearing to the Court that just cause exists to grant the Motion on a final basis,

IT IS HEREBY STIPULATED AND AGREED BY AND BETWEEN THE DEBTOR AND THE LENDER (DEFINED BELOW) THAT:

Debtor's Stipulations. Without prejudice to the rights of parties in interest as set forth in paragraph 9 below, the Debtor admits, stipulates, acknowledges and agrees that (collectively, paragraphs (A) through (G) below are referred to herein as the "Debtor's Stipulations"):

  A.  *Prepetition Facility*. Prior to the commencement of the Debtor's Chapter 11 case, the Debtor entered into that certain U.S. Small Business Administration Note dated as of May 20, 2005 in the original principal amount of $1,100,000 in favor of Cornerstone Business Credit, Inc. (now known as New Alliance Bank) (as amended, supplemented, restated, or otherwise modified prior to the Petition Date, the "Note" and together

-1-

with all other loan, guaranty, security and other documents executed in connection therewith, including, without limitation, the May 20, 2005 Security Agreement between the Debtor and Cornerstone Business Credit, Inc (the "Security Agreement"), collectively, the "Loan Documents").

B. *Prepetition Obligations*.  As of June 15, 2010, the aggregate outstanding principal amount owed by the Debtor under the Note was approximately $667,740.15 (together with any and all accrued and unpaid interest and other amounts due under the Loan Documents, the "Prepetition Obligations").

C. *Prepetition Liens and Collateral*.  As more fully set forth in the Loan Documents, prior to the Petition Date, the Debtor granted security interests in and liens on, among other things, substantially all of its existing and after-acquired assets (collectively, the "Prepetition Collateral") to the Lender (the "Prepetition Liens").

D. *Assignment of Note and Loan Documents*.  On or about April 9, 2010, the New Alliance Bank assigned all of its right, title and interest in and to the Note and the other Loan Documents to HMZ Energy LLC (the "Lender").

E. *Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations*.  Subject to the provisions below of this Interim Order, the Debtor and Debtor-in-Possession acknowledges and agrees that: (i) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral were

valid, binding, enforceable, non-avoidable and properly perfected; (ii) the Prepetition Obligations constitute legal, valid, binding and non-avoidable obligations of the Debtor; (iii) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature exists as to any of the Prepetition Liens, Prepetition Obligations, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, re-characterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (iv) the Debtor and its estate have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Lender or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors and employees arising out of, based upon or related to the Prepetition Obligations; (v) any payments made under the Loan Documents or on account of the Prepetition Obligations to or for the benefit of the Lender prior to the Petition Date were secured, were payments out of the Prepetition Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

F. *Cash Collateral.* The Debtor represents that all of the Debtor's cash, wherever located, whether as original collateral or proceeds of other

Prepetition Collateral, constitutes the Cash Collateral of the Lender.

G.  *Necessity of Relief Requested.* The ability of the Debtor to finance its operations requires the use of Cash Collateral, absent which immediate and irreparable harm will result to the Debtor, its estate and creditors. The Debtor does not have sufficient available sources of working capital and financing to operate its business or to maintain its property without the use of the Cash Collateral. The relief requested in the Motion is therefore necessary, essential, and appropriate for the operation of the Debtor's business and the management and preservation of its property. The Lender and the Debtor have negotiated at arms' length and in good faith regarding the Debtor's use of Cash Collateral to fund the operation of the Debtor's business during the Specified Period (as defined below). The Lender has agreed to permit the Debtor to use its Cash Collateral for the Specified Period, subject to the terms and conditions set forth herein. Entry of this Interim Order is in the best interests of the Debtor and its estate.

IT IS HEREBY ORDERED that:

1.  The Motion is granted. The Debtor is authorized to use the funds subject to the security interests of the Lender and the security interest claimed by Stephen H. Sack d/b/a Sack Distributors and/or its assignee, Sovereign Bank (collectively, "Sack/Sovereign") in the amounts and for the purposes set forth in the budget attached hereto from July 3, 2010 through August 27, 2010 (the "Specified Period").

2. The Lender is entitled to receive adequate protection to the extent of any diminution in value of its interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral, the use, sale or lease of Prepetition Collateral, the subordination of the Prepetition Liens to the Carve Out, as described herein, and the imposition of the automatic stay (collectively, the "Diminution in Value") pursuant to sections 361, 362 and 363 of the Bankruptcy Code. Pursuant to sections 361 and 363, as adequate protection: the Lender will receive, (i) effective as of the Petition Date and without the necessity of the execution by the Debtor of security agreements, control agreements, pledge agreements, financing statements or otherwise, valid and perfected security interests in and liens on all of the right, title and interest of the Debtor in, to and under all present and after acquired property of the Debtor of any nature whatsoever including, without limitation, all cash contained in any account of the Debtor, and the proceeds of all causes of action, other than causes of action, and proceeds thereof, arising under chapter 5 of the Bankruptcy Code (the "Assets"); and (ii) weekly reports from the Debtor (due on Wednesday of each week, commencing with a report on June 23, 2010) setting forth, with reasonable particularity, actual cash receipts and disbursements as compared to budget (the "Weekly Reports"). The secured position of the Lender that existed on the Petition Date may not be improved by virtue of the granting of the replacement liens as set forth herein.

3. In light of the Lender's agreement to subordinate its liens to the Carve Out and to permit the use of its Cash Collateral for payments made in accordance with the budget and the terms of this Interim Order, the Lender is entitled to (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) upon entry of a final order

authorizing the Debtor's use of the Cash Collateral (the "Final Order"), a waiver of the provisions of section 506(c) of the Bankruptcy Code.

4. Sack/Sovereign is hereby granted, without the necessity of the execution by the Debtor of security agreements, control agreements, pledge agreements, financing statements or otherwise, a post-petition lien upon and security interest in the Assets, with the same validity, extent and priority as the pre-petition lien and security interest, if any, of Sack/Sovereign pursuant to 11 U.S.C. § 361(2) to the extent of any diminution in the value of Sack/Sovereign's pre-petition lien and security interest; however, the secured position of Sack/Sovereign that existed on the Petition Date may not be improved by virtue of the granting of the replacement liens as set forth herein. Sack/Sovereign shall also receive the Weekly Reports.

5. Nothing herein shall be deemed to be an adjudication or a declaration by the Court of rights with respect to the existence, validity, enforceability, subordination or priority of any liens or security interests allegedly granted by the Debtor to Sack/Sovereign or allegedly possessed by Sack/Sovereign prior to the Petition Date. Further, nothing herein shall be deemed to be an adjudication or a declaration by the Court with respect to the relative priority of any liens or security interests held against the Debtor by the Lender vis-à-vis Sack/Sovereign (or vice versa).

6. This Order does not provide for cross collateralization.

7. The Debtor shall file monthly financial statements/operating reports on or before the 20th calendar day following the end of each calendar month in accordance with United States Trustee's Operating Guidelines and Financial Reporting Requirements.

8. The post-petition liens and security interests of the Lender and Sack/Sovereign are subject and subordinate to U.S. Trustee fees payable pursuant to 28 U.S.C. § 1930, post-

petition taxes, and wages due non-insider employees for post-petition services actually rendered (the "Carve-Out").

9. Nothing in this Order shall prejudice the rights of an Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee (the "Committee") and, if no Committee is appointed, any other party in interest who has standing by the Court (other than the Debtor), to object to or challenge the Debtor's Stipulations. A party, including the Committee, if appointed, must commence, as appropriate, a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against the Lender in the nature of a setoff, counterclaim or defense to the applicable Prepetition Obligations (each, a "Challenge") within the earlier of: (i) with respect to the Committee, sixty (60) calendar days from the date of formation of the Committee, and (ii) if no Committee is appointed, with respect to other parties in interest with requisite standing other than the Debtor or any Committee, ninety (90) calendar days following the Petition Date (together, the "Challenge Period"). Upon the expiration of the Challenge Period, as to the Lender, if a Challenge has not been properly commenced: (A) any and all such Challenges by any party (including, without limitation, any Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in any successor case), shall be deemed to be forever waived, released and barred and (B) all of the Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, validity, amount and secured status as to the Lender's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders and other parties in interest in this case and any successor case.

Dated: July 1, 2010                                                BY THE COURT

                                                                                                        Albert S. Dabrowski
                                                                                                  United States Bankruptcy Judge