UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
(HARTFORD DIVISION)

| | |
|---|---|
| IN RE<br><br>THE KASDEN FUEL COMPANY,<br><br>Debtor. | CASE NO. 10-21973 (ASD)<br>(CHAPTER 11) |
| HMZ ENERGY LLC,<br><br>Plaintiff,<br>v.<br><br>SACK DISTRBUTORS CORP. &<br>THE KASDEN FUEL COMPANY,<br>Defendants. | ADVERSARY PROCEEDING<br>NO. 10-02183 (ASD)<br><br>(LEAD/MAIN CASE) |
| THE KASDEN FUEL COMPANY,<br><br>Plaintiff/Objector,<br>v.<br><br>SACK DISTRIBUTORS CORP.,<br><br>Defendant/Claimant. | ADVERSARY PROCEEDING<br>NO. 10-02362 (ASD)<br><br><br>MAY 10, 2011 |

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF**
**HIS MOTION FOR SUMMARY JUDGMENT**

In accordance with this Court's Scheduling Order dated April 11, 2011, James A. Beldner, the Chapter 11 Trustee ("Trustee") of The Kasden Fuel Company ("Debtor") hereby files this Memorandum of Law in Support of his Motion for Summary Judgment dated April 8, 2011. Trustee submits that there are no disputed issues of material fact and that the Trustee is entitled to summary judgment as a matter of law. The Trustee joins in the Memoranda of Law submitted by HMZ Energy LLC ("HMZ") dated January 7, 2011, March 31, 2011, and May 10, 2011. However, in his

Memorandum the Trustee will focus on the absence of any disputed issue of material fact.

The issue presented in this Summary Judgment Motion is whether Sack Distributors Corp. ("Sack") is a secured or an unsecured creditor. The consequences of such a ruling affect both HMZ and the Trustee but in very different ways. If Sack is unsecured, then HMZ's prepetition secured claim is a secured claim second in priority only to HMZ's DIP claim. However for the Trustee, whether Sack is unsecured affects whether administrative claimants come before or after the amount of any secured claim and, thus, whether the estate is administratively insolvent.

## ARGUMENT

### I. SACK HAS RAISED NO DISPUTE AS TO ANY MATERIAL FACT

The material facts are:

1. The Debtor and Sack entered into a Commercial Security Agreement (the "Security Agreement") and Commercial Reserve Credit Agreement and Note (the "Note" collectively the "Agreements"), both dated December 14, 2000. See Sack Distributor Corp's Local Rule 56(a)2 Statement, Doc. 46, at ¶ 1.

2. The Security Agreement by its terms secured "payment and performance of the Loan and all other liabilities and obligations of Borrower to Lender of every name and nature whatsoever, direct or indirect, absolute and contingent, now existing, whether as maker, debtor, guarantor, surety, endorser, pledgor, or otherwise (hereinafter called "Liabilities")." Id. at ¶ 2.

3. The Note which evidenced the Loan had a maturity date of December 20, 2005 and a Credit Limit of $2 million. Id. at ¶¶ 5-6.

2

    4.    Sack asserts that invoices in the approximate amount of $6.9 million for the purchase of oil from 2008 through April, 2010 ("Sack Invoices") are secured by the Security Agreement. Id. at ¶ 3.

    5.    Neither the Note nor the Security Agreement were amended or modified in writing. See Deposition of Stephen H. Sack, Jr. at 65:9-68:3.

    6.    Neither the Note not the Security Agreement were amended or modified orally. Id. at 67:15-68:3; Sack Statement at ¶ 16.

    7.    The signer of the Security Agreement and Note, William Deitch, and the party with whom he negotiated, Steven Sack, Sr., are both deceased.[1] (Sack Affidavit, ¶ 2.)

The Security Agreement and Note are clear that the Sack Invoices are not covered by the Security Agreement and are thus unsecured. They are not covered by the Note which matured in 2005, well before the obligations for the Sack Invoices were incurred. They are also not covered by the residual clause which is limited to obligations "now existing." Moreover, as effectively argued in the HMZ Memoranda, the residual clause does not cover future advances which is what the Sack Invoices are.

---

[1] Although not recited by either party in its submissions, on this Motion, prior testimony indicated that William Deitch is deceased. Bankruptcy Rule 7056(c)(3).

## II. SACK'S STATEMENT OF DISPUTED FACTS IS IMMATERIAL TO THE RESOLUTION OF THIS MOTION

In his counterstatement, pursuant to Rule 56(a), Sack asserts that the following disputed issues of fact are material to the resolution of the Motion. They are not.

1. Whether the parties intended the Sack Note and Sack Security Agreement to cover all Advances made by Sack to Kasden over and above $2 million and after December 2005.

2. Whether the parties intended to modify the Sack Note and Sack Security Agreement to provide that all Advances made by Sack to Kasden over and above $2 million and after December 2005 would be covered by the Sack Note and Sack Security Agreement.

3. Whether the Sack Note and Sack Security Agreement were modified by the course of performance and conduct of the parties after December 2005 to provide that all Advances made by Sack to Kasden over and above $2 million and after December 2005 would be covered by the Sack Note and Sack Security Agreement.

4. Whether the provisions in the Sack Note for a "Credit Limit" of $2 million was intended by the parties to be subject to increase upon Sack's approval pursuant to ¶ 5 of the Sack Note.

5. Whether the $2 million "Credit Limit" in ¶ 3 of the Sack Note was waived by Sack.

The Trustee will discuss these contentions separately.

> A. *Whether the Parties Intended the Note and Sack Security Agreement to Cover All the Advances Made By Sack to Kasden Over and Above $2 Million and After December, 2005.*

Presumably this contention relates to the intent of the parties as of December, 2000 when William Deitch and Steven Sack, Sr. entered into the Agreements at issue. The Security Agreement covered two classes of obligations (i) the Loan (Note); and (ii) all other obligations, "*now existing*" (the "residual obligations"). The Loan by its terms matured on December 20, 2005 and accordingly can not be a basis to secure the subsequent invoices. Similarly, the subsequent invoices were not "now existing" within the meaning of the Security Agreement. There is no ambiguity.

As the First Circuit held, "if security agreements which on their face served as collateral for specific loans could be converted into open-ended security agreements for future liabilities by recitals and subsequent notes" much needless uncertainty would be introduced into modern commercial law. Safe Deposit Bank & Trust Co. v. Berman, 393 F.2d 401, 404 (1st Cir. 1968).

The court went on to say that this is especially so "as against an innocent third party who had extended credit on the basis of the assumption that the . . . security agreement was no longer effective after payment of the note it purported to secure." Id. at 404. The Trustee joins in the other arguments made on this point in the HMZ Memoranda.

Moreover, the Trustee adds the following observation by the United States Bankruptcy Court for the District of Illinois in rejecting a claim by a secured creditor that the court must review parol evidence to determine the intent of a Security Agreement:

5

> The CODE sets out the rules to be followed in the commercial world. While in a sense these rules, in some instances, may appear to be somewhat arbitrary in nature, they are a practical set of rules which the players in the commercial world developed and are expected to play by. The rules are made known and the players are expected to abide by them. Once exceptions are created based upon a liberal interpretation of the CODE and the equities of a particular case, the exceptions would overwhelm the rules. The predictability and finality sought by the commercial world would be lost.

First Star Bank Burlington, N.A. v. Stark Agricultural Services, Inc. et al. (In re: Kevin W. Emerick Farms, Inc.) 201 B.R. 790, 805 (Bankr. Ct. C.D. Ill. 1996).

In addition, Sack has not offered any evidence from outside the four corners of the Agreements that the parties actually intended anything other than what was stated clearly in the Agreement. Unfortunately both Steven Sack, Sr. and William Deitch are deceased. Accordingly, it is unclear what admissible evidence may be presented in support of Sack's contention. In his affidavit, Steven Sack, Jr. makes conclusory statements that certain provisions of the Agreement were included in 2000 for the benefit of Sack. (Sack Affidavit, ¶ 7.) Such a statement does not appear to be based on personal knowledge and is not admissible. Bankruptcy Rule 7056(c)(4).

B.  *Whether the Parties Intended to Modify the Sack Note and Sack Security Agreement to Provide That All Advances Made by Sack to Kasden Over and Above $2 Million as of December, 2005 Would be Covered by the Sack Note and Sack Security Agreement.*

The Trustee refers the Court to the arguments made by HMZ regarding the authentication requirement under Conn. Gen. Stat. §§ 42-9-203, 204 and the Statute of Frauds Conn. Gen. Stat. § 52-550.

However, the Trustee submits that Sack has not set forth any admissible evidence that would support his contention even if such evidence were allowed to be

6

considered. Sack has testified that there was no written modification of these documents, see, Sack Jr. Deposition at 65:9-68:3, and has also admitted that there was no oral modification between the parties. See Sack Statement, Doc. 46 at ¶ 16; Sack Jr. Deposition, p. 67:15-68:3. Certainly, the evidence contained in the Ide Affidavit (¶ 6) that at a meeting in January, 2010 Bruce Deitch remained silent when Sack asserted that he held a secured claim is not evidence of intent.

> C. *Whether the Sack Note and Sack Security Agreement Were Modified by the Court's Performance and Conduct of the Parties After December, 2005 to Provide that All Advances Made Sack to Kasden Over and Above $2 Million and After December, 2005 Would Be Covered by the Sack Note and Sack Security Agreement.*

Again, the Trustee refers to the Court to the arguments made by HMZ regarding Conn. Gen. Stat. §§ 42-9-203, 204 and Conn. Gen. Stat. § 52-550 and related cases. In fact, the Trustee was unable to find any case in Connecticut or elsewhere where a note or a security agreement was modified by course of conduct.

The only evidence submitted by Sack on this point is that Kasden continued to purchase fuel from Sack in the same manner after 2005 as he did before, through bills of lading. See Sack Statement at ¶ 16. Those bills of lading make no reference whatsoever to the Note or Security Agreement. As indicated by HMZ's discussion regarding the part performance doctrine applicable to an ordinary contract, the course of conduct must evidence an *alteration* of behavior that cannot be explained but for the existence of an agreement. Glazer v. Dress Barn, Inc., 274 Conn. 33, 67 (2005). This is exactly the opposite of the undisputed facts here. (Sack Affidavit, ¶ 8.) The parties continued to do what they had done before. Therefore, this course of conduct which is undisputed, is of no help to Sack.

7

Such evidence is also barred by the composite document rule. Even where a security agreement is found to be ambiguous, a court can only allow evidence of contemporaneous documents that can explain what the court finds to be an ambiguous security agreement. In re Sabol, 337 Bankr. 195 (Bankr. C.D. Ill. 2006). The subsequent bills of lading are by no means contemporaneous and can not be considered by the Court.

> D. Whether the Provisions of the Sack Note for Credit Limit of $2 Million Was Intended by the Parties to be Subject to Increase Upon Sack's Approval Pursuant to Section 5 of the Sack Note.

This contention does not relate to the central issue in the case of whether Sack's claim is secured or unsecured but rather goes to the contention of the amount of any secured claim. Moreover, Section 5 of the Note specifically sets forth that the Borrower may request Advances only up to the Credit Limit. This issue has been addressed above.

> E. Whether the $2 Million "Credit Limit" in Paragraph 3 of the Sack Note was Waived by Sack.

Again this contention does not relate to whether or not Sack is secured but rather to the amount of any secured claim. As discussed above, there is no writing evidencing such a waiver by either party. Sack has presented no admissible evidence that the parties who negotiated the Agreements intended that the Credit Limit may be unilaterally waived beyond the termination date by Sack. Accordingly, the Court should reject this claim as well.

### III. A TRIAL WOULD NOT ADD TO THE FACTS ON WHICH THE COURT WOULD BASE ITS RULING

On the existing record, the Court can determine that there are no issues of material fact and that the Trustee is entitled to judgment as a matter of law. The contentions raised by Sack are inferences he seeks to draw from an undisputed fact – the continuous conduct of the parties long after the Agreements were signed. The Court can and should determine now that such evidence is inadmissible and, in any event, not relevant. At trial Sack bears the burden of proof. In re Guadalupe, 365 Bankr. 17, 20 (D. Conn. 2007); In re DeGeorge Financial Corp., 2002 U.S. Dist. LEXIS 17621 (Bankr. Ct. 2002). The two negotiators of the Agreements are deceased and cannot be heard from. The case has been pending for over six months and Sack has had an opportunity for discovery.[2] Accordingly, the Court can decide the merits based on the existing record.

### CONCLUSION

The Trustee requests that the Court grant his Motion for Summary Judgment and for such other and further relief as is just.

---

[2] Of the four depositions Sack noticed, he received documents from all parties but elected not to depose anyone.

JAMES A. BELDNER – CHAPTER 11
TRUSTEE OF KASDEN FUEL COMPANY

By:    /s/ Robert A. White
      Robert A. White – ct08277
      Daniel P. Elliott –ct28058

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone: (860) 240-6000
Facsimile: (860) 240-6150
His Attorneys

2204373v1