ORIGINAL

1

```
1   IN THE UNITED STATES BANKRUPTCY COURT
    FOR THE DISTRICT OF CONNECTICUT
2
    In Proceedings Under Chapter 11
3   Case Number:  10-21973
    - - - - - - - - - - - - - - - - - - - - - - - -
4   In the Matter of:
         THE KASDEN FUEL COMPANY,
5                           Debtor.
    - - - - - - - - - - - - - - - - - - - - - - - -
6

7

8   Adversary Proceeding: 10-02183
    - - - - - - - - - - - - - - - - - - - - - - - -
9   HMZ ENERGY, LLC,
                   Plaintiff,
10              v.
    SACK DISTRIBUTORS CORP., ET AL.,
11                 Defendants.
    - - - - - - - - - - - - - - - - - - - - - - - -
12

13          Excerpt of the Hearing on

14    Doc #43 - Scheduling Order on 4/11/2011

15  (Re:[30] Motion for Summary Judgment filed by

16          Plaintiff HMZ Energy LLC.)

17               May 11, 2011

18

19  H e l d   B e f o r e:

20         The Hon. ALBERT S. DABROWSKI,

21           U.S. Bankruptcy Judge

22

23

24

25
```

UNITED REPORTERS, INC.
www.unitedreporters.com
Nationwide - 866-534-3383 - Toll Free

1   A p p e a r a n c e s:

2        For the Plaintiff:

3             ROGIN NASSAU LLC

4             185 Asylum Street, 22nd Floor

5             Hartford, Connecticut  06103

6                  By:  BARRY S. FEIGENBAUM, ESQ.

7

8        For the Defendant:

9             PULLMAN & COMLEY

10            850 Main Street

11            P.O. Box 7006

12            Bridgeport, Connecticut  06601

13                 By:  IRVE J. GOLDMAN, ESQ.

14                      JESSICA GROSSARTH, ESQ.

15

16       For the Connecticut Department of

17       Enviromental Protection:

18            OFFICE OF THE ATTORNEY GENERAL

19            55 Elm Street

20            P.O. Box 120

21            Hartford, Connecticut  06141-0120

22            By:  KRISTA E. TROUSDALE, ESQ.

23                 Assistant Attorney General

24

25

```
 1    A p p e a r a n c e s (Cont'd.):
 2          For the Connecticut Department of
 3          Revenue Services and Department of
 4          Labor:
 5                OFFICE OF THE ATTORNEY GENERAL
 6                55 Elm Street
 7                P.O. Box 120
 8                Hartford, Connecticut  06141-0120
 9                By:  DENISE MONDELL, ESQ.
10                     Assistant Attorney General
11
12          For the Chapter 11 Trustee:
13                COOLEY GODWARD KRONISH, LLP
14                The Grace Building
15                1114 Avenue of the Americas
16                New York, New York  10036
17                     By:  MICHAEL KLEIN, ESQ.
18
19                MURTHA CULLINA, LLC
20                CityPlace I
21                185 Asylum Street
22                Hartford, Connecticut  06103
23                     By:  ROBERT A. WHITE, ESQ.
24
25
```

```
 1                    (The following was transcribed
 2     from a digital sound recording.)
 3
 4                         *  *  *
 5                      12:15 P.M.
 6
 7                    THE COURT:  All right.
 8     Mr. Feingenbaum, you were going to consult,
 9     and I assume everybody has, to the extent
10     possible, with their clients.
11                    MR. FEINGENBAUM:  I believe
12     so, your Honor.  I think the parties have
13     agreed to give brief comments.
14                    THE COURT:  Okay.
15                    MR. KLEIN:  Your Honor, before
16     we get to that, I wanted to raise one point
17     of clarification with respect to the bid
18     procedures and the place of the auction.  I
19     had said that we would agree to have the
20     auction in Hartford.  I think that your Honor
21     may have been implying that the auction
22     should take place itself in the courtroom.
23                    THE COURT:  No, not
24     necessarily, but --
25                    MR. KLEIN:  Okay.
```

```
 1                    THE COURT:   -- in Hartford so
 2   in the event there's some kind of a dispute,
 3   you could come over here.
 4                    MR. KLEIN:  Right.
 5                    THE COURT:  Where --
 6                    MR. KLEIN:  That's perfect.
 7                    THE COURT:  Okay.
 8                    MR. KLEIN:  Thank you, your
 9   Honor.
10                    THE COURT:  Mr. Feingenbaum.
11                    MR. FEINGENBAUM:  Thank you,
12   Judge.  Your Honor, obviously, I think --
13   there's been lots of briefs filed.  I filed
14   three briefs.  Mr. Goldman filed a brief.
15   Mr. White filed a brief on behalf of the
16   trustee.  So I don't really think it's
17   appropriate, given the volume that you have
18   to deal with, that it's necessary to repeat
19   all the arguments, and I have no intention of
20   doing so, so I will make a few brief
21   comments, basically, in light of -- because
22   we had simultaneous briefs -- in light of the
23   brief from Sack.
24                    Your Honor, there -- it is
25   clear from those briefs that there is no
```

1   material issue of fact here -- no issue of

2   material fact here.  Three parties admit to

3   the documents, the basic documents, the note

4   and security agreement.

5             THE COURT:  Well, actually,

6   it's interesting.  One of the things that

7   slows me down is the 56(a)(2) statement.  The

8   responsive pleading was not specific to admit

9   or deny.  It also contained argument to some

10  extent.  And that's -- that's a -- this is --

11  this is -- it is a critical observation from

12  a judge's perspective, but it is the usual

13  and it makes it -- when I approach a summary

14  judgment motion, I want the facts, and

15  they're normally teed up in A1 and A2, and

16  then the arguments are set forth separately.

17  And right out of the slot, I find myself

18  slowing down dealing with arguments as to is

19  this relevant, is this not, what's going on

20  here.

21            And then, of course, as you

22  know, there were numerous documents,

23  including the commercial security agreement,

24  which was attached, I believe, to Document ID

25  Number -- ECF Number 22 in the adversary,

1  which appears to the Court to have particular

2  relevance to the resolution of the matter.

3                    MR. FEINGENBAUM:  Well, your

4  Honor, I think --

5                    THE COURT:  And you might want

6  to address that.

7                    MR. FEINGENBAUM:  Yeah.  Well,

8  that's exactly what I intend --

9                    THE COURT:  The definition of

10 collateral contained within Section 1 of

11 the -- page one of that.

12                    MR. FEINGENBAUM:  I think it's

13 the definition, with all due respect, of

14 liabilities (inaudible) --

15                    THE COURT:  Well -- and

16 above --

17                    MR. FEINGENBAUM:  Yes.

18                    THE COURT:  That incorporates

19 the definition of --

20                    MR. FEINGENBAUM:  And that's

21 exactly what I intend to address, your Honor.

22                    THE COURT:  All right.

23                    MR. FEINGENBAUM:  And I

24 believe there's no dispute between the

25 parties that that is the commericial security

1   agreement involved here, and that -- attached

2   to that --

3                    THE COURT:  I'm so far -- if

4   it's not, advise me, because I'm treating it

5   as -- as undisputed, and it's certainly

6   worthy of consideration in the context of

7   resolving this motion.  Whether it's

8   dispositive or not, as I sit here at this

9   minute, I haven't determined, yet, its

10  importance.

11                   MR. FEINGENBAUM:  And then

12  there is the note that's attached to it, and

13  I don't believe there's any dispute that

14  those are the written documents that we have

15  here.  There is the obligations of Sack --

16  obligations, rather, of the estate to Sack,

17  which are set forth in the Sack claim, and I

18  don't believe there's any dispute that that's

19  the Sack claim in this case against the

20  Debtor.  And as a result of looking at that

21  claim, it's clear that anything that was due

22  and owing on December 14, 2005, has been

23  paid.

24                   And so, accordingly, the Sack

25  claim is for an amount due after that date,

1    and that December 14, 2005, is a significant

2    date, your Honor, because that's the date

3    which is five years after the date of the

4    note.  And I believe there's no dispute.

5    There have been no oral modifications to the

6    security agreement, and modifications that

7    are being attempted to be inferred here are

8    sullied by course of conduct as stated by

9    Sacks' brief.

10             Your Honor, this is solely an

11    issue of state law, and frankly, I'm reminded

12    of my old tort professor's admonishment

13    continually during first year law school,

14    about don't forget the statute, and the

15    statute is what governs here.

16             And there are two statutes in

17    the UCC which are of particular importance,

18    and relevant, and pertinent to this

19    decision -- to this matter:

20    42(a)-9-203(a)(2)(a) and the official comment

21    that interprets that statute states that a

22    security agreement must be authenticated, and

23    a security agreement in this context to be

24    authenticated means it must be in writing;

25    42(a)-9-204(c), and it's official comment

1    number five, is the other statute in the UCC

2    that's so critical here, and that provides

3    that for a security agreement to cover future

4    advances, that language needs to be in the

5    security agreement.  And as I'll go

6    through -- as we go through that commericial

7    security agreement, I'll point out that that

8    language isn't in there.

9                    Accordingly, there has to be a

10   written security agreement, and there has to

11   be a specific provision for future advances.

12   Here, the security agreement only covers the

13   note and the other obligations then existing,

14   and it's only through, your Honor, a tortuous

15   reading of the granting paragraph of the

16   commericial security agreement that one can

17   even farfetched -- on a farfetched basis

18   conclude that there was future advances that

19   were -- that were contemplated.  And the

20   reason is that the Defendant's reading

21   ignores that the term "liabilities," capital

22   L, is a defined term.  And if we look to that

23   document, your Honor -- I have copies if

24   people need it or if your Honor needs it --

25   but if we look to that document, it defines

1    "liabilities" in the penultimate sentence,

2    and those liabilities are the liabilities

3    under the note, the commericial reserve

4    credit agreement and note, in consideration

5    of the loan, secure payment and performance

6    of the loan and all other liabilities and

7    obligation of lender -- excuse me --

8    obligations of borrower to lender of every

9    name and nature whatsoever, direct or

10   indirect, absolute and contingent now

11   existing, now existing.

12                    It doesn't say, or hereinafter

13   incurred or any other such language.  It says

14   now existing, whether as maker, debtor,

15   guarantor, surety, endorser, pledgor or

16   otherwise, hereinafter called the

17   liabilities.  So liabilities has a strict

18   defined term.  It's obligations under the

19   note and other obligations that may have been

20   then existing.  And then it goes on to say,

21   it is the true, clear and express intention

22   of the borrower that the continuing grant of

23   this security interest remain as security for

24   payment and performance of the liabilities

25   now existing and whether or not such

1   liabilities, capital L, are related to the

2   transaction described in Schedule A by class

3   or kind or whether or not contemplated by the

4   parties at the time of the granting of this

5   security interest.

6                    There is no way to read that,

7   your Honor, and give -- give credence to the

8   fact that liabilities is a defined term.

9   That there is no way to read this last

10  sentence or the penultimate sentence in any

11  other way that it does not include future

12  advances, and that the only way to include

13  future advances would be by Mr. Goldman's

14  concept of course of conduct, which the law

15  does not permit.  The law simply does not

16  permit because it's not in the security

17  agreement.  The statute is clear.  There has

18  been no modification that's been

19  authenticated, which means in writing, signed

20  by the parties.  There's only this security

21  agreement.

22                    Accordingly, 9-204(c) is not

23  complied with.  That is the import of the

24  Berman case and the cases which discussed

25  Berman, and in fact, it is the import of a

(none)

1    case even cited by Sack, the Lackow case,

2    which points out the distinction when you

3    have future advance language.  It's critical.

4    It has to be there.  That's what the

5    Legislature said.

6                    So the Defendant says, okay,

7    well, we modified the note.  Well, your

8    Honor, you can't modify the note by course of

9    conduct because then you wouldn't be in

10   compliance with Connecticut General Statute

11   Section 52-550, which is the statute of

12   frauds.  Since this was for over $50,000, any

13   new arrangement for advances of loans after

14   the maturity date had to be in writing, and

15   there's some discussion by Mr. Goldman about

16   maturity date and right to terminate, et

17   cetera.

18                    Well, maturity date, your

19   Honor, has -- has a meaning, and the maturity

20   date is the date at which the obligation

21   becomes due.  There are a couple of cases

22   that -- that speak to that that I don't think

23   are in the briefs, McIntyre versus Ticor

24   Title Insurance Company, 658 F.Supp. 944

25   District of Alaska 1986, and Virgin Islands

1    versus Brown 221 F.2nd 402 Third Circuit

2    1955.  And those cases, your Honor, adopt

3    basically the Black's Law Dictionary

4    definition of maturity date as the date which

5    the obligation becomes due.  That date was

6    December 14, 2005, and all of the obligations

7    that were due and owing as of December 14,

8    2005, have been paid, and there's no dispute

9    of fact about that.

10                    In order to amend that note

11   consistent with the statute of fraud, there

12   would be a writing.  There was no writing.

13   Again, course of conduct under the case law,

14   which I put forth in detail, would require

15   that -- require the writing, and that course

16   of conduct, because this relationship can be

17   explained in another way, that is, the

18   purchase of oil on an open account, simply

19   doesn't hold water as a modification.

20                    The note had a defined credit

21   limit of $2 million and a maturity date of

22   five years.  The Defendant claims it could

23   increase, at its discretion, the credit

24   limit, and again, your Honor, that's only if

25   you ignore the definition of credit limit,

1    but that's a defined term, and that's the $2

2    million, and they claim that the maturity

3    date can be changed at its discretion because

4    somehow that's a waiver of a provision for

5    their benefit, that would turn commericial

6    law on its head.  I've never heard of such an

7    argument.  In fact, there's no case that says

8    so.  There can't be because it would have you

9    -- a unilateral imposition of an obligation

10   on another party in contravention of the

11   statutes of frauds.

12                   There is termination language,

13   and termination language, your Honor, is

14   common in lines of credit.  Prior to the

15   maturity date, they can be terminated and the

16   parties can pay off the obligation and walk

17   away.  Does that mean that the obligation

18   continues beyond the maturity date?

19   Absolutely not, because the obligation was

20   due then, and it can only be -- that due date

21   can only be extended when you have future

22   advances, in other words, new loans, that can

23   only be extended under -- to comply with the

24   statute of frauds in writing.

25                   Your Honor, to listen to the

1    Defendant's argument is to come away with a

2    completely different set of agreement than

3    are in evidence and have been agreed to by

4    the parties.   The Defendant would have this

5    Court change the credit limit, the maturity

6    date, imply future advance clause, and read

7    out the words "then existing."   And that's

8    the only way they can prevail, and you can't

9    do that consistent with the statutes that

10   I've mentioned.   If these parties wanted your

11   Honor to have a simple security agreement to

12   cover future purchases, they could have said

13   so.   They went into this whole scheme with a

14   note, with a credit limit, et cetera.   That's

15   what they agreed to.   That's what they're

16   stuck with.   If they wanted the -- a security

17   agreement to cover future purchases, they

18   could have said so.   They didn't.   They could

19   have amended the documents in writing.   They

20   didn't.   So this is what we're stuck with.

21            There are no cases cited by

22   the Defendant, your Honor, that hold that

23   course of conduct can create a future advance

24   clause where none existed in their written

25   security agreement, and no cases have been

1  cited which hold that a note can be modified

2  by course of conduct and stay within the

3  requirements of the statute of frauds.  In

4  fact, your Honor, the main cases cited by the

5  Defendant deal with other statutes, deal with

6  other issues, not the issues before the

7  Court.  Of course, there are no cases which

8  hold the way that the Defendant would like to

9  hold because it's just not the law.

10              So therefore, your Honor,

11  based on the briefs, based on these brief

12  comments I've made today, we think that the

13  Court has to grant the summary judgment here

14  in order to be consistent with the statutes

15  involved and in order to give credence to

16  these agreements which the parties executed.

17  Thank you.

18              THE COURT:  Hold on,

19  Mr. Goldman.

20              Lisa.  (Inaudible.)  Okay.

21  Well, if I can't do it, I can't do it.  Okay.

22  Thank you.

23              Mr. Goldman.

24              MR. GOLDMAN:  Yes, thank you,

25  your Honor.  I think --

1              MR. WHITE:  Your Honor, did

2    you --

3              THE COURT:  Oh, well,

4    actually, you've got a separate motion with

5    regard to Count 2.

6              MR. WHITE:  Correct.

7              THE COURT:  And you think

8    Count 3 is --

9              MR. WHITE:  It's the same

10   argument as Mr. --

11             THE COURT:  Okay.

12             MR. WHITE:  If I have three

13   minutes, I'll sit down -- it's up to you --

14             THE COURT:  No.  I -- I

15   overlooked you.  I shouldn't have.

16             MR. WHITE:  That's --

17   that's -- (inaudible) need to.  But your

18   Honor, basically, the -- we adopt Attorney

19   Feingenbaum's arguments, papers, and his oral

20   arguments.  As we indicated in our papers,

21   the trustee is here essentially with respect

22   to administer to creditors that a finding

23   that Sack is secured would impact not only

24   HMZ, but more to the point -- administer to

25   creditors that it would render the estate

1    insolvent.  We adopt the arguments that have

2    been made by counsel that we think the

3    response to the brief that there was really

4    only three issues that I saw that the -- the

5    note, as you indicated, the collateral as

6    security for the payment and performance of

7    borrowers, liabilities, initial "L," to

8    lender.  That's paragraph one.

9              Mr. Feingenbaum went over the

10   definition of liabilities.  That infers now

11   existing.  There is no future advances, and

12   the claims that are being covered under the

13   agreement are invoices from 2008 to 2010 so

14   they're clearly not covered.  The explanation

15   of the maturity date has been made and course

16   of conduct is not relevant.  The only

17   exception that has been talked about to the

18   writing, something called "the composite

19   document rule," and it's very clear that

20   those documents have to be contemporaneous.

21   There is no dispute as to fact as to the

22   documents that are being relied on.  They are

23   bills of lading eight years late.  So it

24   doesn't even fit into the narrow exception.

25              Your Honor, just in summary,

1   we would not be here arguing about this had

2   Sack negotiated with Kasden and obtained a

3   writing extending all this.  His rights would

4   have been protected.  He didn't.  He is now

5   the largest unsecured creditor in the case.

6   Thank you.

7              THE COURT:  Mr. Goldman.

8              MR. GOLDMAN:  Thank you, your

9   Honor.  Just preliminarily, I wanted to

10  address your Honor's concern about our Rule

11  56 response.

12             THE COURT:  That is not --

13  it's not going to affect the disposition of

14  the matter.  It's just by way of a general

15  observation, and I know it was your 56(a)(2),

16  but I get them all the time like that, and

17  it's just helpful if they're very precise.

18  You admit you deny, or in some cases, you

19  admitted parts, you bifurcated, which is

20  fine.  But you then added --

21             MR. GOLDMAN:  Yeah.

22             THE COURT:  -- argument to it.

23             MR. GOLDMAN:  And I apologize

24  for doing that.  I will bear that in mind

25  in --

1                    THE COURT:  It's just an

2    observation.

3                    MR. GOLDMAN:  -- future

4    motions, but I did want --

5                    THE COURT:  It didn't

6    prejudice you in any way.

7                    MR. GOLDMAN:  I did want to

8    explain to the Court the reason that I did

9    that was because our scheduling order does

10   say that in my statement it shall set forth

11   any alleged new material facts.  Now, maybe I

12   went a little beyond on that --

13                   THE COURT:  Okay.

14                   MR. GOLDMAN:  -- to get in the

15   realm of argument, but I inserted --

16                   THE COURT:  This becomes a

17   problem when I get 300 paragraphs --

18                   MR. GOLDMAN:  Yeah.

19                   THE COURT:  -- in statements.

20   This is relatively easy in the context of

21   determining what the facts are as admitted

22   and being undisputed by a comparison of the

23   A1's and A2's.

24                   MR. GOLDMAN:  Very --

25                   THE COURT:  It's not a

1    problem.  Don't dwell on it.

2                    MR. GOLDMAN:  Very well.

3    Okay.  Thank you.

4                    With that, I think there are

5    two fundamental factual inaccuracies that HMZ

6    is attempting to pass off here.  The first of

7    which is the -- the fact that the security

8    agreement by its terms does not cover future

9    advances.  That is ambiguous at best, but let

10   me -- before I get into that, there is

11   nothing in Section 9-204(c) that requires the

12   magic words "future advances" to be in a

13   security agreement in order to cover future

14   advances.  It simply says, the security

15   agreement may provide for future advances,

16   that collateral will cover future advances.

17   So to take away from that that unless the

18   words "future advances" are in a security

19   agreement then you're out of luck is just not

20   supported.

21                    Now, to address the actual

22   security agreement as Mr. Feingenbaum has

23   gone through.  I first would like to note

24   that the, quote, security agreement that

25   we're dealing with here is not only the

1    actual commercial security agreement that he

2    was quoting from, but it is also the note.

3    The note and the security agreement have to

4    be construed together.  In fact, the note is

5    actually incorporated into the security

6    agreement as being attached as Schedule A.

7    So you really have to construe both of those

8    documents together as the security agreement.

9              Now, unlike the Berman case,

10   which has been cited numerous times, the

11   security agreement here covers liabilities

12   other than one specific note.  The security

13   agreement in the Berman case just referred to

14   one note.  Here, we have a security agreement

15   that covers the loan and all other

16   liabilities, obligations of every name and

17   nature whatsoever.  Now, the language

18   following that, Mr. Feingenbaum maintains is

19   an exclusive listing, a bracketing, so to

20   speak, of what those liabilities consist of,

21   but that is not the natural reading of that

22   clause, I would submit.  I would submit

23   instead that what follows after the word

24   "whatsoever," comma, direct or indirect,

25   absolute and contingent, now existing as

1   whether maker, debtor, guarantor, surety,

2   endorsor, pledgor or otherwise is

3   exemplative.  It is an exemplative listing of

4   what the liabilities are.  It is not

5   purporting to be exhaustive and to define

6   those liabilities.

7                    And the fact that the word --

8   words "hereinafter incurred" are not

9   contained here should not be dispositive,

10  because in the very next sentence, you see

11  that it's -- the parties are clarifying their

12  intent that the liability shall cover those,

13  again, now existing and then you have the

14  word "or," quote, whether or not contemplated

15  by the parties at the time of the signing of

16  this agreement -- or at the granting of this

17  security agreement.  So if future advances --

18  and our position is that future advances were

19  contemplated under the note -- it's perhaps

20  an open question as to whether they were

21  contemplated in excess of $2 million or made

22  after -- or those made after December 14,

23  2005.  But even if they weren't contemplated,

24  they are covered by this provision, which

25  says, "or whether or not contemplated by the

1    parties at the time of the granting of the

2    security agreement."

3                    At a very minimum, it creates

4    an ambiguity in this agreement precluding the

5    grant of summary judgment.  That is not an

6    unreasonable reading of these two companion

7    provisions.  I would submit that that

8    interpretation is further supported by the

9    note, which although it defines credit limit

10   in paragraph three as $2 million, we then

11   have in paragraph five, under the manner of

12   requesting advances, it says you -- all

13   requests for advances by Kasden under this

14   agreement may be, quote, up to the credit

15   limit approved for me.  Well, if credit limit

16   is already defined in paragraph three, why do

17   we have the words "approved for me."  There

18   is a legitimate reading of this language to

19   mean that Sack could approve a higher credit

20   limit for Kasden under -- under the terms of

21   this agreement.

22                   And it would be reasonable for

23   them to contemplate such a -- such discretion

24   in this case.  We've presented evidence of

25   the circumstances of the entering into these

1    agreements; that is, that Sack had become the

2    exclusive supplier of Kasden and was expected

3    to remain its exclusive supplier in the

4    future so that the parties should have the

5    flexibility of increasing the credit limit.

6              It is also unreasonable to

7    presume that the parties entered into this

8    voluntary agreement with idea that if Sack

9    was magnanimous enough to increase Kasden's

10   credit at its request, that Sack would be

11   unsecured for that amount.  In fact, it's

12   counterintuitive to believe that the parties

13   would enter into this type of arrangement and

14   have that result.  So I would submit that the

15   interpretations further if you -- if you look

16   at that language in the note, it at least

17   creates an ambiguity raising a genuine issue

18   of material fact precluding summary judgment.

19              Now, the idea that there is a

20   maturity date in the note, I would dispute

21   and for the reasons that I set forth in my

22   brief.  The parties knew how to see how this

23   agreement is terminated.  In paragraph 9 and

24   19 of the note, there is a specific way to

25   terminate the agreement, and contrary to what

1    Mr. Feingenbaum has represented, that just

2    doesn't apply to prematurity termination.

3    Paragraph 19 -- paragraph 9 does say that,

4    that you can terminate by paying in full, but

5    paragraph 19 has no limitation of terminating

6    pre -- before the five-year period expires.

7    It just says, I may terminate this agreement

8    at any time by paying you in full all

9    outstanding balances and other charges I owe

10   under this agreement and by sending you the

11   written notice of such intention.  And, as

12   we've set forth in Mr. Sack's affidavit, no

13   notice of termination was ever sent.

14              Now, as to the -- as to the

15   legal argument, let me address first the

16   argument that any modification or amendment

17   had to be authenticated, and I would also

18   preliminarily like to note that Sacks first

19   argument here is that course of performance

20   under this agreement amplifies rather than

21   modifies the security agreement.  It

22   essentially shows that from day one the

23   parties exceeded the credit limit within --

24   as Mr. Sack set forth two weeks after they

25   entered into the agreement, and really were

1    operating under these documents as if this

2    were a revolving credit facility --

3                    THE COURT:  Mr. Goldman, would

4    you -- I want to access the note for a

5    moment.  I've got a copy of the security

6    agreement, and I just want to interrupt you

7    because I want to give full attention to your

8    argument.  And I just wanted to take a quick

9    look at the note so bear with me for a

10   second.

11                   (Pause.)

12                   THE COURT:  I'm looking at

13   2183, which is HMZ Adversary, the lead case,

14   and I'm looking at 22, which is the motion,

15   and there are various exhibits.  Three is the

16   commericial security agreement.  What exhibit

17   is the note, if you know?

18                   MR. GOLDMAN:  It's A.  Yeah,

19   it's A.

20                   MR. FEINGENBAUM:  Your Honor,

21   perhaps, I can cut through that.  If you look

22   at Document Number 31.

23                   THE COURT:  All right.  Wait a

24   minute.

25                   MR. FEINGENBAUM:  Which is my

1    memo.

2              THE COURT:  Okay.

3              MR. FEINGENBAUM:  It's Exhibit

4    A to that.

5              THE COURT:  All right.  Thank

6    you, Mr. Goldman.

7              MR. GOLDMAN:  Okay.

8              THE COURT:  And

9    Mr. Feingenbaum, for the reference.

10             MR. GOLDMAN:  So if I can turn

11   now to the legal argument, as I was doing,

12   and the argument that any modification or

13   amendment had to be authenticated.  Again, as

14   I was saying, our -- our first argument here

15   is that course of performance really just

16   lends interpretative assistance as to the

17   meaning of the security agreement rather than

18   modifying it.  Although, we are saying that

19   in the event, if necessary, it also modifies

20   the security agreement, but it does

21   essentially reflect that they -- the parties

22   went beyond the credit limit in paragraph

23   three immediately after the agreement was

24   entered into, functioned as if it was a

25   revolving facility up until April of 2010.

1                       And the intent of the parties

2     is -- is basically corroborated by the

3     affidavit that we submitted by Mr. Ide, where

4     in January of 2010, when Kasden was seeking

5     to get new financing, there was a discussion,

6     with Mr. Sack present, about how that was

7     going to be done, because it was going to be

8     primarily for -- to pay down the Sack line,

9     and there was a discussion at that time that

10    Mr. Sack had a lien on the assets.

11                      The Deitchs remained silent.

12    I would submit that that is an adoptive

13    admission.  Based on the evidentiary portion

14    of my brief, the Court should consider that,

15    at least in determining what the parties

16    intent was concerning the agreement for

17    purposes of the instant motion for summary

18    judgment, and I think it has to be, at least

19    for purposes of this motion, accepted as

20    true.  And the course of performance that we

21    say amplifies or modifies the documents is, I

22    would submit, consistent with -- there is a

23    way at least to construe it as being

24    consistent with the terms -- the actual terms

25    of the agreement and note because, as I've

1    stated, the credit limit in paragraph three

2    of the note can be construed as being subject

3    to approval of a higher amount under

4    paragraph five, that there's no term of

5    expiration under the term of the note and

6    only provisions dealing with termination,

7    which weren't exercised, and you also have

8    the -- whether or not contemplated language

9    here would at least create an issue of fact

10   as to whether -- what was done was

11   contemplated or not contemplated.

12                    In any event, the argument

13   that the course of performance of the parties

14   can't be considered here where each act of --

15   unless each act of performance is

16   authenticated simply can't be accepted.  That

17   essentially asks the Court to engraft an

18   exception to the UCC section of course of

19   performance, and the definition of agreement,

20   which is set forth in Section 1-201(b)(3).

21   And it specifically provides that an

22   agreement -- part of an agreement is -- can

23   be defined as the parties' course of

24   performance under that agreement.

25                    What Mr. Feingenbaum is

1    arguing -- arguing is that section should

2    contain an exception for -- unless the

3    agreement is a security agreement and the

4    party is -- and the issue is whether or not

5    the security agreement covers future

6    advances.  That exception does not exist in

7    that Article 1 section.  And in addition, in

8    Article 1 of the UCC, as adopted in

9    Connecticut, specifically Section 1-102, it

10   specifically states that all sections in

11   Article 1 are applicable to every other

12   article of the Uniform Commericial Code.

13            So in addition, even taking

14   the statute that Mr. Feingenbaum relies on,

15   9-204(c), for the creation of future

16   advances, it still refers to a security

17   agreement may provide.  Well, in defining

18   security agreement that just takes you back

19   to course of performance through the

20   definition of agreement in Article 1 and

21   through the definition of course of

22   performance also in Article 1 applicable to

23   all other articles of the Uniform Commercial

24   Code.  So I don't think that the provision

25   that's cited here, 9-204(c), in any way cuts

1  off the argument that we've been making here.

2  It just refers you back to course of

3  performance.

4                    Now, the -- the -- the

5  argument -- I'd next like to address the

6  argument that the note can't be amended

7  without a writing or -- a part performance.

8  First of all, I don't think it's even

9  necessary to consult the note to reach the

10  conclusion, at least for the purposes of

11  denying the motion for summary judgment, that

12  Sack's current claim is secured, because we

13  have the language in the security agreement

14  that covers liabilities whether or not

15  contemplated by the parties, so you really

16  don't even have to consult the note.

17                    But if you are going to

18  consult the note, there are two problems I

19  view with their argument.  First is that

20  purposes of determining the scope of the

21  security agreement before the Court, you

22  can't really separate out the note and argue

23  that the parties' postagreement course of

24  performance can't be considered because it

25  wasn't in writing.

1          The note, as I've pointed out,

2   is essentially incorporated into the security

3   agreement by having been attached as Schedule

4   A.  So you can't get away from the point that

5   course of performance has to be considered by

6   arguing the statute of frauds.  That is

7   simply a disguised argument that the course

8   of performance has to be authenticated in

9   order to be legally effective and should not

10  be accepted.

11          As I've mentioned, Sack's

12  argument doesn't depend on there being an

13  amendment to the note.  The note by its terms

14  can be construed as continuing since there

15  was never any termination of the note, and

16  paragraph eight can be interpreted reasonably

17  to simply provide that whatever outstanding

18  balances there were on the five-year

19  anniversary of the note had to be paid as of

20  that date.

21          Now, the argument on part

22  performance, even if the Court accepts the

23  fact, the argument that the note would have

24  to be consulted, they cite the -- the Glazer

25  case for this idea that part performance has

1    to be of such a character that they can be

2    naturally and reasonably accounted for in no

3    other way than by the existence of some

4    contract in relation to the subject matter in

5    dispute.

6              Now, in that case, the court

7    found there was not part performance because

8    the conduct in question -- first of all, they

9    were trying to create a contract.  They

10   didn't have an contract, actual contract

11   between the parties.  They were trying to

12   create one by part performance.  And the

13   court found that several sending out of

14   prebillings, so-called "deferred billing

15   category -- statements" that were relied on

16   in that case as the part performance, the

17   sending out of those statements prior to the

18   time that they say the contract was created

19   prevented that conduct from being part

20   performance.  And also, in that case, the

21   plaintiff was trying to establish part

22   performance with the testimony of its own

23   witness that, yes, they intended this to be

24   part performance.

25              We don't have any of that

1   here.  We have an existing agreement that was

2   in effect between these parties, and we have

3   a -- virtually identical course of

4   performance post-December 2005 as existed

5   before that period of time.

6                    And we also have not only the

7   testimony of Sack, but we have in evidence

8   the intent of the Debtor that Sack remain

9   secured for those post-December 2005 advances

10  by the adoptive admissions that I have cited

11  in the papers.  I would also submit that it

12  is illogical to conclude that after December

13  2005, at a time when Kasden owed my client 4

14  to 5 million dollars, that Sack intended to

15  continue to support this company under the

16  terms of these agreements, as it had done

17  from December 2005, without remaining

18  secured.

19                   And so the performance that

20  continued after 2005, December 2005, if to

21  the extent the Court considers it necessary

22  to do so, should be considered part

23  performance, because it's illogical to

24  conclude that as Sack continued to support

25  this company and got -- and they got into

1   Sack even further that that would not have

2   been referable to the agreements that were in

3   -- that are in effect as of December 2005.

4               And that's all I have, your

5   Honor.

6               THE COURT:  Mr. Feingenbaum.

7               MR. FEINGENBAUM:  Your Honor,

8   just a brief rebuttal.  It's exactly these

9   tortured analyses and illogical or not

10  illogical kind of discussions is what the

11  statutes of frauds and what Uniform

12  Commericial Code is designed to protect

13  against.  You're supposed to have precision.

14  You're supposed to have certainty in the law

15  of commericial transactions.  It's what the

16  Berman talks about.  It's what treatises talk

17  about and all the cases talk about.  And we

18  start with the security agreement.  We went

19  through the language.  Mr. Goldman would like

20  to see the "not existing" read out of it, but

21  you can't do that.  That's what it says.

22  That's the best evidence.

23              THE COURT:  You mean -- you

24  said not existing, you mean --

25              MR. FEINGENBAUM:  Now

1  existing --

2                    THE COURT:  -- now existing.

3                    MR. FEINGENBAUM:  -- cannot be

4  read out of that agreement.  It says what it

5  says with regard to that.  There's no

6  indication anywhere in that agreement that it

7  covers future advances whatsoever.  With

8  respect that "or not contemplated by the

9  parties," well, that could be other

10  obligations that are owed at that time.  For

11  example, what if that -- that the parties

12  weren't thinking about -- for example, what

13  if there was a Sack truck -- excuse me -- a

14  Kasden truck that caused damage to a Sack

15  terminal.  Well, and maybe the parties didn't

16  know about it.  That could be -- that would

17  be covered by that because that would be an

18  obligation then existing that the parties

19  haven't contemplated.

20                    It doesn't say contemplated in

21  the future or future advances or anything

22  like that.  Nowhere it says that.  It just

23  says now existing, period, end of story.  You

24  have to read everything in accordance with

25  the definition of liabilities, which is

1   limited by now existing, and anything that is

2   secured here is only the liabilities.

3                 Your Honor, with respect to

4   that future advances language, it doesn't

5   have to be in writing.  Well, that would be

6   contrary to every case and every treatise

7   that's ever discussed this issue, and I would

8   just leave it at that.  With respect to the

9   note and these different readings of the

10  note, I just want to point out a couple of

11  things.  I just want to get it in front of

12  me.

13                THE COURT:  Well, you've

14  stipulated that the language of the note is

15  what it is, so to speak.

16                MR. FEINGENBAUM:  The written

17  words are what they are and --

18                THE COURT:  Stipulate the

19  obvious.  So you're talking about his

20  interpretation of the language --

21                MR. FEINGENBAUM:  Exactly,

22  your Honor.

23                THE COURT:  -- not the

24  language.  Okay.

25                MR. FEINGENBAUM:  Because for

1    example, if you look at paragraph 19,

2    paragraph 19, which he points to several

3    times about the right to terminate, it says,

4    paying you full for all outstanding advance

5    balances, capital "A," advanced balances.

6    Okay.  What is that?  Well, an advance

7    balance is defined -- and advance is defined

8    in paragraph two, and it says, "made during

9    the period that this agreement is in effect."

10   The agreement is in effect until it's due.

11   The obligations were due on December 14,

12   2005.  There was no writing or no other

13   indication otherwise.

14              The purchase of oil after that

15   date could have been on open account.  If the

16   parties wanted to put that in the terms of a

17   note or a new security agreement, they could

18   have done that.  They could have modified

19   these documents.  They didn't.  And that

20   would -- what would be required in this

21   situation.

22              So therefore, based on what is

23   truly a fair reading of -- of these documents

24   with respect to giving credence to all of its

25   words and to all of the defined terms, as

1   well as the statutes and cases involved, that

2   summary judgment in favor of the Plaintiff,

3   your Honor, is appropriate.  Thank you.

4                    THE COURT:  All right.

5                    MR. KLEIN:  Your Honor, I have

6   nothing further.  I would just join that

7   summary judgment should be granted.

8                    THE COURT:  Mr. Goldman, last

9   and final word.

10                   MR. GOLDMAN:  Yes, I just

11  wanted to add, your Honor.  I did not say

12  that future advance -- future advance clauses

13  didn't have to be in writing.  What I said

14  was the exact words "future advances" didn't

15  have to be used not that they -- clauses

16  don't have to be in writing, and I believe

17  this one was.

18                   THE COURT:  All right.  Thank

19  you.  I'll take the matter under advisement.

20  So you will all be pleased I was advised,

21  about an hour ago that the temperature

22  problem has been resolved.

23                   MR. FEINGENBAUM:  Good to

24  know.

25                   MR. KLEIN:  Thank you, your

1    Honor.

2                    MR. FEINGENBAUM:  Thank you,

3    Judge.

4                    THE CLERK:  All rise.  The

5    court is adjourned.

6                    (Whereupon, the above

7    proceedings were adjourned at 1:04 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           CERTIFICATE

2          I hereby certify that the foregoing 41
   pages are a complete and accurate
3  transcription of a digital sound recording
   taken of the Excerpt on the Hearing on DOC#43
4  - SCHEDULING ORDER ON 4/11/2011 (RE:[30]
   MOTION FOR SUMMARY JUDGMENT FILED BY
5  PLAINTIFF HMZ ENERGY LLC), which was held in
   Adversary Proceeding Number 10-02183, HMZ
6  ENERGY LLC, Plaintiff, versus, SACK
   DISTRIBUTORS CORP., ET AL., Defendants, held
7  in Lead Case Number 10-21973, THE KASDEN FUEL
   COMPANY, Debtor, which was before The Hon.
8  ALBERT S. DABROWSKI, U.S. Bankruptcy Judge,
   at the Federal Building, 450 Main Street,
9  Hartford, Connecticut, on May 11, 2011.
           I further certify that the digital sound
10 recording was transcribed by the word
   processing department employees of United
11 Reporters, Inc., under my direction.

12

13

14

15

16

17

18                    _____

19                    Guy B. Raboin, President
                      Notary Public
20                    UNITED REPORTERS, INC.
                      90 Brainard Road, Suite 103
21                    Hartford, Connecticut  06114

22

23

24

25